# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MONA WILEY,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**ALLIED FIRST BANCORP, INC.**, a Maryland corporation,<br><br>*Defendant*, | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Mona Wiley ("Plaintiff Wiley" or "Wiley") brings this Class Action Complaint and Demand for Jury Trial against Defendant Allied First Bancorp, Inc. ("Defendant" or "Allied First Bank") to stop the Defendant from violating the Telephone Consumer Protection Act by directing the making telemarketing calls *without consent* to consumers who registered their phone numbers on the National Do Not Call registry ("DNC). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Mona Wiley is a resident of Sioux Falls, South Dakota.

2. Defendant Allied First Bank is a Maryland corporation with its principal place of business in Oswego, Illinois. Defendant Allied First Bank conducts business throughout this District, Illinois, and the U.S.

## JURISDICTION AND VENUE

3. This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction and venue is proper since the Defendant resides in this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 4.1 billion robocalls were placed in November 2021 alone, at a rate of 137.4 million calls per day. www.robocallindex.com (last visited December 20, 2021).

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

16. Defendant Allied First Bank is a savings bank headquartered in Oswego, IL.

17. Allied First Bank directs the making of unsolicited calls to consumers including those who are registered on the DNC.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

18. Allied First Bank hires third-party telemarketers to place cold calls for generating leads of potential consumers, including a company called Endeavor.

19. To generate leads for banks providing mortgage refinances, in the first instance, Endeavor purchases leads, which are loaded into Endeavor's dialer.

20. When a lead expresses interest in a mortgage refinance, Endeavor's telemarketer transfers them directly to one of the branch managers or loan officers whom Endeavor works with at its bank customers.

21. Allied First Bank has been an Endeavor customer since approximately 2018.

22. Endeavor and Allied First Bank do not have a written agreement.

23. Allied First Bank is invoiced on a weekly basis for each lead transferred to its branch managers and loan officers.

24. Endeavor charges Allied First Bank between $40 and $60 per lead on average.

25. Allied First Bank supplies Endeavor the parameters for leads it will accept, including minimum loan balances, credit scores, rates, and other qualifications for the leads.

26. Allied First Bank retains the right to give Endeavor further instructions regarding its efforts to generate leads on Allied First Bank's behalf.

27. The branch managers and loan officers at Allied First Bank to whom Endeavor's telemarketers transfer leads are aware that the leads are generated by Endeavor through outbound telemarketing calls.

28. Endeavor has transferred thousands of leads to Allied First Bank.

29. For twenty-five years the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."

*In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

30. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[3]

31. In that ruling, the FCC instructed that sellers such as Allied First Bank may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

32. In response to these calls, Plaintiff brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

### PLAINTIFF WILEY'S ALLEGATIONS

33. Plaintiff Wiley registered her cell phone number on the DNC on October 7, 2014.

---

[3] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

34. Plaintiff's cell phone number is not associated with a business and is used for personal use only.

35. In June of 2020, the Plaintiff received unsolicited phone calls from Endeavor on behalf of Defendant Allied First Bank from the phone number 443-228-7375.

36. Endeavor called Ms. Wiley for the purpose of generating her as a lead for a mortgage refinance.

37. On November 30, 2020, the Plaintiff answered a call from the phone number 443-228-7375. The call was silent, and it eventually automatically disconnected.

38. On December 10, 2020, Plaintiff received another call from the phone number 443-228-7375. Plaintiff answered this call and spoke to a live agent who said they were calling from Endeavor. The agent said the call was regarding VA refinancing. The Plaintiff told the agent that she does not need refinancing and asked for her cell phone number to be removed from Endeavor Leads' call list. The agent said, "Ok" and ended the call.

39. On December 14, 2020, despite her clear request for the calls to stop, the Plaintiff received another call from the phone number 443-228-7375.

40. Again, an agent told the Plaintiff that they were calling from Endeavor. The agent also said the call was from the VA streamlined department.

41. On December 15, 2020, Plaintiff received yet another unsolicited call from Endeavor from the phone number 443-228-7375.

42. The agent asked the Plaintiff some questions to determine if the Plaintiff would qualify for a VA home loan, and the Plaintiff again indicated she was uninterested.

43. The Plaintiff called 443-228-7375 on January 4, 2021, to find out who was responsible for the calls or on whose behalf those calls were placed and to make sure she does not

receive any further calls. Plaintiff spoke to an agent who said he is with Endeavor. After answering a few questions for the purpose of identifying who had been calling her, she was transferred to Defendant Allied First Bank.

44. Endeavor transferred Ms. Wiley to an Allied First Bank loan officer as a lead because she satisfied Allied First Bank's express requirements for a lead.

45. Endeavor charged Allied First Bank for providing Ms. Wiley as a lead.

46. Plaintiff was connected to an Allied First senior loan officer who identified as Tim and who solicited plaintiff for a mortgage refinancing or VA home loan.

47. Plaintiff was not looking for mortgage refinancing or a VA home loan and did not give consent to Endeavor or the Defendant Allied First bank to call her.

48. The unauthorized solicitation telephone calls that Plaintiff received on behalf of Allied First Bank have harmed Plaintiff Wiley in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

49. Seeking redress for these injuries, Plaintiff Wiley, on behalf of herself and a Class of similarly situated individuals, bring suit under the TCPA.

## CLASS ALLEGATIONS

50. Plaintiff Wiley brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Endeavor called on behalf of Defendant more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom the

Defendant claim (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call Plaintiff, or (b) they obtained the person's number in the same manner as Defendant obtained Plaintiff's number.

51. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Wiley anticipates the need to amend the Class definition following appropriate discovery.

52. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

53. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Endeavor placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days at the time of each call;

(c) whether the Defendant is vicariously liable for these calls;

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

54. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. The Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to the Plaintiff. The Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither the Plaintiff nor her counsel have any interest adverse to the Class.

55. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Wiley. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Wiley and the Do Not Call Registry Class)**

56. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

57. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o

person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

58. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

59. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Wiley and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

60. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Wiley and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

61. As a result of Defendant's conduct as alleged herein, Plaintiff Wiley and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

62. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Wiley individually and on behalf of the Class, prays for the following relief:

a. An Order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Wiley as the representative of the Class; and appointing her attorneys as Class Counsel;

b. An award of actual and/or statutory damages and costs;

c. An Order declaring that Defendant's actions, as set out above, violate the TCPA;

d. An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Wiley requests a jury trial.


DATED this 5th day of January, 2022.

            **MONA WILEY**, individually and on behalf of all others similarly situated,

            By: /s/ Juneitha Shambee
            Juneitha Shambee Esq.
            Shambee Law Office, Ltd.
            701 Main St., Ste. 201A
            Evanston, IL. 60202
            773-741-3602
            juneitha@shambeelaw.com
            ARDC: 6308145

            Avi R. Kaufman
            kaufman@kaufmanpa.com

Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*